## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     *Plaintiff*,

     v.                            **No. 19-1145**

$36,800.00 UNITED STATES CURRENCY,

     *Defendant-in-rem.*

### VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Plaintiff, United States of America, brings this complaint in accordance with Supplemental Rule G(2) of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions, and alleges as follows:

### NATURE OF THE ACTION

1.    This is a civil action to forfeit and condemn to the use and benefit of the United States of America property involved in violations of the Controlled Substances Act and 18 U.S.C. § 1952 that is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C).

### DEFENDANT *IN REM*

2.    The defendant *in rem* consists of the following:

    a.  Thirty six thousand eight hundred ($36,800.00) United States Currency, (hereafter referred to as "Defendant Currency").

3.    The Defendant Currency was seized by the Drug Enforcement Administration on July 22, 2019, in the District of New Mexico.

4.    The Defendant Currency is now, and during the pendency of this action will be, in the jurisdiction of this Court.

### JURISDICTION AND VENUE

5.     The United States District Court for the District of New Mexico has subject matter jurisdiction under 28 U.S.C. §§ 1345, 1355(a) and 1356.

6.     Venue for this civil forfeiture action is proper in this district pursuant to 28 U.S.C. §§ 1355 and 1395, as acts or omissions giving rise to the forfeiture took place in this district and the property is found in this district.  Upon the filing of this complaint, the Defendant Currency will be arrested by execution of a Warrant for Arrest *In Rem* in the District of New Mexico.

### FACTS

7.     On July 22, 2019, Drug Enforcement Administration Special Agent Jarrell W. Perry reviewed an Amtrak Train Passenger Name Record (PNR) in the name of Darvin Ratliff, reflecting a one-way travel from Galesburg, Illinois to Los Angeles, California in sleeper car number 340, bedroom number 17. The travel was purchased with $1,067.00 in cash on July 20, 2019 at 9:38 a.m. Amtrak Train number three was scheduled to depart Galesburg, Illinois on July 21, 2019 at 5:26 p.m.

8.     On July 22, 2019, Agent Perry boarded the westbound Amtrak Train number three during its scheduled stop in Albuquerque, New Mexico. Agent Perry walked to bedroom number 17 in sleeper car number 340 and observed that the doorway to bedroom was open. A male, later identified as Darvin C. Ratliff, was sitting on the left hand side of the bedroom. Agent Perry stood to the right of the doorway.

9.     Agent Perry asked Ratliff for permission to see his ticket and Ratliff replied, "Yes sir." Agent Perry asked Ratliff where he was traveling. Ratliff said, "Los Angeles." Agent Perry asked Ratliff where he began his trip and Ratliff said, "Galesburg." Agent Perry asked Ratliff if he lived in Galesburg and Ratliff said, "Yes sir." Ratliff handed Agent Perry an Amtrak Train ticket in the name of Darvin Ratliff. Agent Perry reviewed the ticket and immediately returned it to Ratliff. Agent Perry requested

2

and received consent to view Ratliff's identification. Ratliff handed Agent Perry an Illinois identification card in the name of Darvin C. Ratliff. Agent Perry reviewed the identification and immediately returned it to Ratliff.

10.     Agent Perry asked Ratliff if he had traveled on the Amtrak train in the past and Ratliff said that he traveled a couple months ago to California. Ratliff said that he was going to California to visit family for about a week or so and that he was planning to return on the Amtrak to Illinois. Agent Perry explained his duties and advised that due to the lack of security on the Amtrak train that passengers sometimes utilize the Amtrak train to transport contraband. Agent Perry asked Ratliff if he had any luggage with him and Ratliff said that he had one bag downstairs. Agent Perry asked Ratliff if he had any luggage in his room. Ratliff identified a backpack on his seat. Agent Perry had earlier observed a duffel bag lying in the overhead bed to the right of Ratliff. Ratliff initially did not identify the duffel bag in the overhead bed. When Agent Perry asked Ratliff about the duffel bag, Ratliff identified the bag as belonging to him.

11.     Agent Perry asked Ratliff for permission to search his black duffel bag and Ratliff replied, "Yes sir, absolutely." Ratliff handed Agent Perry his backpack and Agent Perry searched the backpack with negative results. Agent Perry observed Ratliff remove the black duffel bag from the overhead bed and unzip it. Agent Perry looked inside of the open duffel bag and observed a large loose bundle of money inside of a wallet. Agent Perry searched the black duffel bag, which revealed white T-shirts in new plastic. Agent Perry picked up the package of T-shirts and felt a larger bundle inside of the T-shirts. Agent Perry asked Ratliff if the package had been opened and Ratliff said, "No sir." Agent Perry opened up the package, which revealed a large bundle of money inside of clear, vacuum sealed plastic. Agent Perry knew from his experience that the concealment method and packaging of the money

were consistent with prior bundles of money involved in illegal drug trafficking business. Ratliff said that he had $5,000.00 with him.

12.     Agent Perry observed other packages of white T-shirts and asked Ratliff if they also contained money. Ratliff said, "No." Agent Perry opened the other packages of T-shirts. Agent Perry located several other bundles of money packaged in the same manner as the first bundle. Ratliff said that he had heat-sealed the bundles "just because he wanted to."

13.     Ratliff stated that he had approximately $30,000.00 with him that he was going to use to purchase an antique vehicle and that the seller had requested cash. Agent Perry requested to see Ratliff's identification again and Ratliff handed Agent Perry his identification. Agent Perry requested and received permission from Ratliff to search his person and room.

14.     Detective Montoya searched Ratliff with negative results for contraband. Agent Perry searched Ratliff's bedroom with negative results. Ratliff provided permission for Agent Perry to search his bag that was downstairs in the common luggage area. Detective Montoya searched the bag downstairs with negative results.

15.     Agent Perry obtained various photographs of Ratliff's identification, black duffel and various bundles of money concealed inside of the black duffel bag. Ratliff said he had about $37,000.00 and that the seller wanted the cash in heat-sealed bundles. Ratliff said that some of the money, $10,000.00 to $15,000.00, had been in the bank and that his uncle, Bennie Ratliff, had given him about $15,000.00 a week ago. Ratliff provided a phone number for Bennie Ratliff. Detective Montoya spoke with a male, who said that he was Ratliff's uncle. The male informed Detective Montoya that he had not seen or spoken to Ratliff in a long time and that he did not know that Ratliff was traveling on the Amtrak train. The man stated that he had not given Ratliff any money at all.

4

16.     Based upon the totality of the circumstances Agent Perry seized the currency. Agent Perry took photographs and placed the currency into a self-sealed envelope in the presence of Ratliff. Agent Perry, Detective Montoya and Ratliff signed the top portion of the self-sealed envelope. Agent Perry filled out a personal property receipt for the unknown amount of US Currency from Ratliff and provided a copy to Ratliff. Agent Perry explained the process for Ratliff to file a claim.

17.     Agent Perry, Detective Montoya and Detective Sinclair walked off of the train. Agent Perry and Detective Sinclair transported the currency to the DEA Albuquerque Office and placed it in a temporary storage vault.

18.     On July 24, 2019, Task Force Office (TFO) F. Chavez and TFO Davis removed the currency from the temporary storage vault. TFO F. Chavez opened sealed envelope for a drug detection canine sniff.

19.     Detective Sinclair deployed his certified drug odor detection canine on the currency. Detective Sinclair informed TFO F. Chavez that the canine alerted positive to the currency for the odor of illegal controlled substances.

20.     TFO F. Chavez and TFO Davis transported the currency to Loomis, Incorporated for an official count, which resulted in a total of $36,800.

21.     Ratliff has a prior felony conviction for manufacture/delivery of cocaine.

### FIRST CLAIM FOR RELIEF

22.     The United States incorporates by reference the allegations in paragraphs 1 through 21 as though fully set forth.

23.     Title 21, United States Code, Section 881(a)(6) subjects to forfeiture "[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all

proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter."

24.     Defendant Currency was furnished, or intended to be furnished, in exchange for a controlled substance, or constitutes proceeds traceable to such an exchange, or was used or intended to be used to facilitate a violation of the Controlled Substances Act and is thus subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

## SECOND CLAIM FOR RELIEF

25.     The United States incorporates by reference the allegations in paragraphs 1 through 21 as though fully set forth.

26.     Title 18, United States Code, Section 981(a)(1)(C) provides, in part, for the forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to an offense constituting a "specific unlawful activity" (SUA) as defined in 18 U.S.C. § 1956(c)(7), or conspiracy to commit such offense.

27.     18 U.S.C. § 1952 prohibits interstate and foreign travel or transportation with the intent to (1) distribute the proceeds of any unlawful activity; (2) commit any crime of violence to further any unlawful activity; or (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity.  Unlawful activity is defined in 18 U.S.C. § 1952(b).

28.     Defendant Currency is the proceeds of a violation of 18 U.S.C. § 1952 or is the proceeds traceable to such property and, is thus subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

WHEREFORE: Plaintiff seeks arrest of Defendant Currency and forfeiture of same to Plaintiff, determination of the validity and priority of claims of the Claimants and any Unknown Claimants to the Defendant Currency, costs and expenses of seizure and of this proceeding, and other proper relief.

Respectfully submitted,

JOHN C. ANDERSON
United States Attorney

STEPHEN R. KOTZ
Assistant U.S. Attorney
P.O. Box 607
 Albuquerque, NM 87103
(505) 346-7274

## 28 U.S.C. § 1746 DECLARATION

I am a Special Agent with the Drug Enforcement Administration who has read the contents of the Complaint for Forfeiture *In Rem* to which this Declaration is attached; and the statements contained in the complaint are true to the best of my knowledge and belief.

I declare under penalty of perjury and the laws of the United States of America that this Declaration is true and correct, except as to matters stated on information and belief, and as to those matters I believe them to be true.

Dated: **12-04-2019**            _____
                                 Jarrell W. Perry, Special Agent
                                 Drug Enforcement Administration

8

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

United States of America

**(b)** County of Residence of First Listed Plaintiff _____

*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

## DEFENDANTS

$36,800.00 UNITED STATES CURRENCY

County of Residence of First Listed Defendant _____

*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1  U.S. Government Plaintiff

☐ 2  U.S. Government Defendant

☐ 3  Federal Question *(U.S. Government Not a Party)*

☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*

*(For Diversity Cases Only)* and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane  ☐ 365 Personal Injury - | ☒ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product   Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability  ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &   Pharmaceutical | | ☐ 820 Copyrights | ☐ 450 Commerce |
| & Enforcement of Judgment | Slander   Personal Injury | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'   Product Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted | Liability  ☐ 368 Asbestos Personal | | | Corrupt Organizations |
| Student Loans | ☐ 340 Marine   Injury Product | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| (Excludes Veterans) | ☐ 345 Marine Product   Liability | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment | Liability  **PERSONAL PROPERTY** | Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle  ☐ 370 Other Fraud | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle  ☐ 371 Truth in Lending | Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract | Product Liability  ☐ 380 Other Personal | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal   Property Damage | ☐ 751 Family and Medical | | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | Injury  ☐ 385 Property Damage | Leave Act | | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury –   Product Liability | ☐ 790 Other Labor Litigation | | Act |
| | Medical Malpractice | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** **PRISONER PETITIONS** | Income Security Act | ☐ 870 Taxes (U.S. | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights  **Habeas Corpus:** | | Plaintiff or | Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting  ☐ 463 Alien Detainee | | Defendant) | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment  ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/   Sentence | | 26 USC 7609 | State Statutes |
| ☐ 245 Tort Product Liability | Accommodations  ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -  ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment  **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities -  ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other  ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education  ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - | | | |
| | Conditions of | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from Another District  ☐ 6 Multidistrict Litigation

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
21 U.S.C. § 881(a)(6)

Brief description of cause:

| | | |
|---|---|---|
| **VII. REQUESTED IN** | ☐ CHECK IF THIS IS A **CLASS ACTION** | **DEMAND $** CHECK YES only if demanded in complaint: |
| **COMPLAINT:** | UNDER RULE 23, F.R.Cv.P. | **JURY DEMAND:** ☐ Yes ☐ No |

**VIII. RELATED CASE(S)**
**IF ANY** *(See instructions):*  JUDGE _____  DOCKET NUMBER _____

DATE    SIGNATURE OF ATTORNEY OF RECORD

 12/5/2019

**FOR OFFICE USE ONLY** RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____